UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YENG XIONG,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | No. 2:14-cv-2095 CKD<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment and remand this matter under sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, born February 9, 1971, applied for SSI and DIB, alleging disability beginning January 29, 2007, later amended to an onset date of February 1, 2007. Administrative Transcript ("AT") 24, 107-117, 128-130. Plaintiff alleged she was unable to work due to minor stroke, diabetes, high blood pressure, blindness in both eyes and kidney problems. AT 135. At a hearing

1

held on April 14, 2009, plaintiff's counsel asserted that plaintiff's primary impairment was a serious psychiatric disorder. AT 25. Plaintiff appealed the ALJ's unfavorable decision to federal district court and the court remanded for further development. A new hearing was held and in a decision dated May 24, 2013, the ALJ determined that plaintiff was not disabled.[1] AT 458-471. The ALJ made the following findings (citations to 20 C.F.R. and the administrative record omitted):

> 1. The claimant met the insured status requirements of the Social Security Act for statutory blindness only through December 31, 2008. She does not meet the regular disability insured status requirements, because she did not have 20 quarters of coverage in the 40 quarters before the alleged onset date.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

>2. The claimant has not engaged in substantial gainful activity since January 29, 2007, the alleged onset date.
>
>3. The claimant has the following severe impairments: hypertension, chronic kidney disease, IgA nephropathy, diabetes mellitus II, partial vision loss, optic atrophy, and major depressive disorder.
>
>4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
>5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and ten pounds frequently. She is able to stand and/or walk for a total of six to eight hours and sit for six to eight hours in an eight-hour workday. She is unable to climb ladders, work at unprotected heights, or work around dangerous moving machinery. She is unable to perform jobs requiring binocular vision or good depth of field. Mentally, the claimant is limited to the performance of simple routine tasks.
>
>6. The claimant has no past relevant work.
>
>7. The claimant was born on February 9, 1971 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
>8. The claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English.
>
>9. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.
>
>10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
>11. The claimant has not been under a disability, as defined in the Social Security Act, from January 29, 2007, through the date of this decision.

AT 460-471.

## ISSUES PRESENTED

Plaintiff argues that the ALJ improperly rejected the record medical opinions regarding plaintiff's mental limitations, erred in assessing plaintiff's residual functional capacity, and erroneously relied on the testimony of a vocational expert. The first issue is dispositive.

////

3

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

All of the treating and consulting mental health practitioners opined that plaintiff had impairments in the ability to do mental work related activities. Although there is a physical residual functional capacity assessment by a state agency physician (AT 309-313), the record does not contain any mental assessment by a state agency physician or any psychiatric/ psychological consultative exam obtained by the Commissioner. AT 467 (ALJ noted the record has no state agency mental health opinion to consider). The ALJ accorded little weight to the

record medical opinions regarding plaintiff's mental impairments. Plaintiff contends the reasons set forth for rejecting the opinions of plaintiff's treating physicians and the consultative examiners are legally insufficient.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

The earliest mental residual functional capacity assessment in the administrative record was completed by Leng Mouaoutoua, Ph.D. on January 23, 2008. AT 330-331. Dr. Mouaoutoua, a psychologist, opined that plaintiff had a poor ability in almost all of the mental work related activities with only a fair ability in the ability to relate to co-workers and in the ability to understand, remember and carry out simple job instructions. The ALJ accorded this opinion no

weight. AT 465. The ALJ indicated there was no evidence that this psychologist ever saw plaintiff. However, the attorney represented that plaintiff had been referred by the Lao Family Clinic to Dr. Mouaoutoua for evaluation, and the form filled out by Dr. Mouaoutoua requested an assessment based on the doctor's examination. AT 27, 330, 347-359. While the ALJ correctly noted that Dr. Mouaoutoua did not set forth any clinical findings in support of the assessment, the treatment notes from the Lao Family Clinic are consistent with Dr. Mouaoutoua's assessment. AT 348 (in November 2008, therapist noted that after twelve months of treatment, plaintiff was still at risk of harming herself, deteriorating mental and physical condition with depressed mood, enraged feelings and excessive worries, GAF[2] for current year 45, past year 41). The ALJ also rejected this assessment because it predated plaintiff's psychiatric treatment and prescribed psychotherapeutic medication. However, the records demonstrate that plaintiff started psychiatric treatment with the Lao Family Clinic in November 2007 and that even after she was prescribed psychotherapeutic medication commencing in March 2008, plaintiff continued to have severe psychiatric impairments. AT 332 (plaintiff prescribed Lexapro and Abilify), 347 (plaintiff admitted to Lao Family Clinic in November 2007; in March 2009, therapist reported plaintiff's depressive symptoms had become more severe and impacted daily functioning level), 416 (June 2008, Dr. Puthlaparampil assessed plaintiff with major depression with psychotic features improving with medication but still emotionally impaired and not able to work); 794 (January 2010, plaintiff extremely depressed, having crying spells, exhibiting suicidal ideation with plan to kill herself by hanging); 792 (January 2010, plaintiff admitted to Crisis Stabilization Unit on 5150 psychiatric hold). Later records, however, indicate that plaintiff's symptoms appeared to be controlled with medications. AT 771-789. On this record, the court cannot find that the ALJ's reasons for rejecting Dr. Mouaoutoua's uncontradicted opinion meet even the "specific and legitimate" standard. The ALJ did not consider whether plaintiff was disabled for a closed

---

[2] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 41-50 indicates serious symptoms such as suicidal ideation, severe obsessional rituals, or serious impairment in social, work, or school functioning.

period. In light of the record showing plaintiff had improvement of her mental condition with psychotherapeutic medication, the court will remand the matter for consideration of a closed period.

Plaintiff also contests the ALJ's determination that the opinion of Dr. White should be accorded little weight. In a report of a psychiatric examination dated April 10, 2009, Dr. White opined that plaintiff was markedly limited in the ability to understand and remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule and maintain regular attendance, to sustain an ordinary routine without special supervision and to complete a normal workday and workweek without interruptions from psychologically based symptoms, to accept instructions and to respond appropriately to criticism from supervisors, to get along with co-workers, to respond appropriately to expected or unexpected changes in the work setting, to be aware of normal hazards and take appropriate precautions, to travel unfamiliar places and/or to use public transportation, and to set realistic goals. AT 423-425. Plaintiff's other mental work related abilities were rated as moderately limited with only mild limitation in the ability to understand and remember very short and simple repetitive tasks. The ALJ accorded Dr. White's opinion little weight. AT 466.

This case was previously remanded by the District Court because the ALJ improperly discredited plaintiff's testimony. AT 536. In remanding the matter, the District Court also noted that the reasons articulated by the ALJ for rejecting Dr. White's opinion did not support giving less weight to that opinion. AT 537. Despite the findings of the District Court in the remand order, the ALJ in the second decision repeated the reasons previously found insufficient for rejecting Dr. White's opinion. In the decision at issue here, the ALJ articulated additional reasons for rejecting Dr. White's opinion, which this court finds insufficient in light of the medical records discussed above which support Dr. White's 2009 opinion.[3]

---

[3] The medical record also contains the January 2013 opinion of Dr. Ignacio, a treating mental health practitioner. At 692-697. Dr. Ignacio rated plaintiff's mental abilities as "poor" in several areas. Except for the ALJ's characterization of plaintiff's report of being legally blind untruthful (AT 666, 669), the court finds the reasons set forth by the ALJ for accordingly little weight to this

7

The remaining question is whether to remand this case to the ALJ for further proceedings or to order the payment of benefits. "The decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court." Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985). Generally, the Court will direct the award of benefits "in cases where no useful purpose would be served by further administrative proceedings or where the record has been thoroughly developed." Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1399 (9th Cir. 1987). Remand for payment of benefits is appropriate where the ALJ erred in discrediting evidence and, absent any outstanding issues to be resolved, it is clear from the record that the ALJ would be required to find the plaintiff disabled were such evidence credited. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

The ALJ improperly rejected the uncontradicted opinions of Drs. Mouaoutoua and White. If these opinions are credited, it appears plaintiff may be entitled to a closed period of disability.[4] The court will therefore remand this matter for consideration of a closed period. Although the record on the prior remand was clear that plaintiff's mental impairment was one of the bases of plaintiff's claimed disability, no consultative mental exam was obtained by the Commissioner. AT 25. On remand this time, the Commissioner is directed to obtain a consultative examination to evaluate plaintiff's mental impairments and for evaluation of whether plaintiff is entitled to a closed period of disability.

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record.[5]

---

opinion are clear and convincing in light of the medical improvement shown in plaintiff's mental health after 2010.

[4] When the limitations assessed by the record mental health practitioners were included in the hypotheticals posed to the vocational expert, the expert testified that there would be no jobs available to plaintiff. AT 40-41, 499; see also SSR 85-15 (describing basic mental demands of competitive, remunerative, unskilled work).

[5] Plaintiff does not challenge the ALJ's finding that plaintiff does not meet the regular disability insured status requirements, because she did not have 20 quarters of coverage in the 40 quarters before the alleged onset date. Accordingly, the court remands for consideration only of whether plaintiff is entitled to a closed period of SSI.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is granted;
2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is denied; and
3. The matter is remanded for further proceedings consistent with this order.

Dated: July 6, 2015

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

4 xiong2095.ss.rem